USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 05/24/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SCORES HOLDING COMPANY INC. and
SCORES LICENSING CORP.,

                Plaintiffs,

v.

CJ NYC INC.,

                Defendant.

No. 17-CV-0020 (RA)

MEMORANDUM OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Scores Holding Company Inc. ("SCRH") is the owner of various marks that Defendant CJ NYC Inc. was authorized to use pursuant to an agreement between Defendant and Plaintiff Scores Licensing Corp. ("SLC"). Plaintiffs allege that Defendant breached the agreement by failing to pay royalties and that Defendant has been using SCRH's marks and trade name without authorization since SLC terminated the agreement in November 2016. Defendant has not appeared in this action, and Plaintiffs move for a default judgment. Plaintiffs' motion is granted.

## BACKGROUND

### I. Procedural History

Plaintiffs commenced this action on January 3, 2017. Defendant was served with a Summons and Complaint on January 11, 2017. Dkt. 7. On February 27, 2017, the Clerk of Court entered a certificate of default against Defendant. Dkt. 16. The same day, Plaintiffs filed the instant motion and the Court issued an order requiring Defendant to show cause at a conference scheduled for April 5, 2017 why a default judgment should not be entered in Plaintiffs' favor.

Dkts. 17, 20. Defendant was served with Plaintiffs' motion papers and the Court's order on March 2, 2017. Dkt. 22. No one appeared at the April 5 conference on behalf of Defendant.

## II. Facts[1]

SLC is a wholly-owned subsidiary of SCRH that is authorized to license certain marks owned by SCRH (the "Scores Marks"). Compl. ¶ 12. On or about November 10, 2015, SLC entered into a license agreement with Defendant that allowed Defendant to use the Scores Marks at an adult entertainment club in Woodside, New York that was to be operated under the name "Scores Queens." *Id.* ¶ 13; *see also id.* Ex. 1 ("License Agreement"). The parties agreed that upon termination or expiration of the agreement all rights granted to Defendant would "immediately revert to SLC and/or [SCRH]" and that Defendant would be obligated "to immediately return to SLC all original artwork, models, samples, prototypes, renderings and drawings incorporating the [Scores Marks] and to cease all uses of the [Scores Marks]." License Agreement ¶ 7(h). Scores Queens began operating on or about November 13, 2015. Compl. ¶ 15; Gans Aff. ¶ 6.

After a honeymoon period of three months, Defendant was required to pay fixed-fee royalties of $10,000 per month for the first two years of the agreement. *See* License Agreement ¶ 2(a). On November 10, 2016, "[h]aving received almost no payments toward royalties" from Defendant, Compl. ¶ 19, SLC sent a letter advising Defendant that it was "in violation of a material obligation under [the agreement]" and that SLC would terminate the agreement if Defendant failed to cure its default within ten days, *id.* Ex. 2. Defendant did not respond. *Id.* ¶ 20. On November 22, 2016, SLC exercised its right to terminate the agreement, giving Defendant until November 30, 2016 to discontinue all use of SCRH's marks and trade name. *Id.* Ex. 3; *see also* License

---

[1] The following facts come from the Complaint and the exhibits thereto and the affidavit of Robert Gans that Plaintiffs submitted in connection with their motion for a preliminary injunction.

2

Agreement ¶ 12(a) (permitting SLC to terminate the agreement ten days after a notice of default based on a failure to pay royalties). At the time of the termination, Defendant owed SLC $85,000 in unpaid royalties. Compl. ¶ 17, Ex. 2; Gans Aff. ¶ 6.

After being notified of the termination, Defendant advised Plaintiffs "that it was taking steps to cease all use of" SCRH's marks and trade name. Compl. ¶ 21; *see also* Gans Aff. ¶ 9. However, it became clear that no steps were in fact being taken. Compl. ¶ 21. Defendant still identifies its club as Scores Queens and "continues to use the [Scores] name and trademarks in . . . connection therewith." *Id.* ¶ 23; *see also* Gans Aff. ¶¶ 9–10. Defendant also continues to use the domain name "scoresqueens.com." Compl. ¶ 24; *see also* Gans Aff. ¶ 10.

## DISCUSSION

"[T]he court may . . . enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). "[A] default is an admission of all well-pleaded allegations against the defaulting party." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). A court is required to "ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

3

Although Plaintiffs asserted nine claims in this action, they seek a default judgment with respect to only three: (1) breach of contract; (2) trademark infringement; and (3) unfair competition. Plaintiffs seek damages, costs, and a permanent injunction.

The Complaint establishes liability for breach of contract as a matter of law. To state a claim for breach of contract under New York law, a complaint must "allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quotation marks omitted). Defendant entered into a contract with SLC, which SLC performed by allowing Defendant to use SCRH's marks and trade name. *See* License Agreement; Compl. ¶ 15; *see also* Gans Aff. ¶ 6. Defendant breached the contract by failing to make $85,000 in royalty payments. Compl. ¶ 17; Gans Aff. ¶ 6; *see also* Compl. Exs. 2 & 3. SLC is thus entitled to $85,000 in breach of contract damages.

The Complaint also establishes liability for trademark infringement and unfair competition. Under the Lanham Act, the analysis for these claims is essentially the same. *See TechnoMarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482, 487 (S.D.N.Y. 2012); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) ("Section 43(a) is a broad federal unfair competition provision which protects unregistered trademarks similar to the way that section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), protects registered marks."). A plaintiff must demonstrate (1) that it holds a mark entitled to protection and (2) that the defendant's use of a similar mark is likely to cause consumer confusion. *See Christian Louboutin S.A. v. Yves Saint Laurent Am. Holding, Inc.*, 696 F.3d 206, 216–17 (2d Cir. 2012); *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 579 (2d Cir. 1991). Taking the allegations in the Complaint as true, the Court finds that SCRH's marks and trade name are entitled to protection. And where, as here, "an ex-licensee

continues to use a mark after its license expires, likelihood of confusion is established as a matter of law." *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 188 (S.D.N.Y. 2009).[2]

The Court has authority under the Lanham Act to award damages and costs. 15 U.S.C. § 1117(a). To recover damages, a plaintiff must establish "either actual consumer confusion or deception resulting from the violation, or that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion." *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992) (citations and quotation marks omitted). The Court finds that this requirement has been satisfied, and will thus award SCRH a "reasonable royalty." *See Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 243 (S.D.N.Y. 2012) (noting that a "reasonable royalty" is an appropriate form of damages under the Lanham Act). SLC gave Defendant until November 30, 2016 to discontinue its use of SCRH's marks and trade name, Compl. Ex. 3, and SCRH has established that Defendant continued to use the marks and name for at least forty-three days after that date, *see* Gans Aff. ¶¶ 9–10 (averring, as of January 12, 2017, that Defendant continued to use SCRH's marks and trade name). Since the royalty rate under the license agreement was $10,000 per month, License Agreement ¶ 2(a), the Court will award SCRH a prorated royalty of $14,333.33.[3] The Court also awards SCRH $529.99 in costs.[4]

---

[2] Defendant is also liable for unfair competition under New York law. "A claim under the Lanham Act, coupled with a showing of bad faith or intent, establishes a claim for unfair competition under New York state common law." *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 436 (S.D.N.Y. 2012) (quotation marks omitted).

[3] SCRH seeks $30,000 in damages, asserting that Defendant had been infringing for three months at the time the motion for default judgment was made. However, SCRH has not submitted any proof of Defendant's infringement beyond January 12, 2017, *see generally* Gans Aff., and the Court cannot award damages without "an evidentiary basis" for doing so, *Cement & Concrete Workers*, 699 F.3d at 234.

[4] The costs are the $400 filing fee and $129.99 for service of process. *See* Greenfield Affirmation ¶ 10, Feb. 27, 2017.

5

The Court has authority under the Lanham Act to grant injunctive relief to prevent infringement and unfair competition, 15 U.S.C. § 1116, and may do so in connection with a default judgment, *see Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 546 (S.D.N.Y. 2015). In determining whether to issue a permanent injunction under the Lanham Act, courts consider:

> (1) the likelihood that plaintiff will suffer irreparable harm if an injunction is not granted; (2) whether remedies at law such as monetary damages are inadequate to compensate plaintiff for that harm; (3) the balance of hardships; and (4) whether the public interest would not be disserved by a permanent injunction.

*Id.* at 547. Each of these factors favors the issuance of an injunction. Despite initially advising Plaintiffs that "it was taking steps to cease all use of" SCRH's marks and trade name following the termination of the agreement, Compl. ¶ 21, Defendant has continued to use both, *id.* ¶¶ 22–24; Gans Aff. ¶¶ 9–10. Defendant's past conduct demonstrates that it is likely to persist in this activity absent an injunction. A continuation of this activity would constitute irreparable harm, and monetary damages would not adequately compensate for the harm. *See U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 540 (S.D.N.Y. 2011) ("Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark because loss of control over one's reputation is neither calculable nor precisely compensable." (quotation marks omitted)), *aff'd*, 511 F. App'x 81 (2d Cir. 2013) (summary order); *Montblanc-Simplo GmbH v. Colibri Corp.*, 692 F. Supp. 2d 245, 259 (E.D.N.Y. 2010) (noting that the "'no adequate remedy at law' [factor] . . . is satisfied where the record contains no assurance against defendant's continued violation"). With respect to the balance of hardships, an infringer cannot complain about the loss of its ability to infringe. *See WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012). Furthermore, "the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of

6

unknown origin and quality." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010). The Court thus grants the request for a permanent injunction.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for default judgment is granted. Defendant shall pay $85,000 in damages to SLC, and $14,333.33 in damages and $529.99 in costs to SCRH. Defendant is permanently enjoined from (1) using any mark or name which contains "Scores" or "Score" or is otherwise confusingly similar thereto for the name of or in connection with any restaurant, bar, cocktail lounge, gentlemen's club, night club, or other entertainment or hospitality venue, including on the premises, in signage, in print, online, or for any other promotional or marketing purposes; and (2) using the term "Scores" or "Score" or any word or term that is confusingly similar thereto in any Internet domain name, including, but not limited to, www.scoresqueens.com, or any social media reference or "handle," including, but not limited to, www.twitter.com/scoresqueens. The Clerk of Court is respectfully directed to enter judgment in accordance herewith, and close the case. All motions are terminated.

SO ORDERED.

Dated: May 24, 2017
New York, New York

Ronnie Abrams
United States District Judge